UNITED STATES, Appellee

v.

Andrew J. FERGUSON, Airman First Class
U.S. Air Force, Appellant

No. 10-0020

Crim. App. No. 37272

United States Court of Appeals for the Armed Forces

Argued January 25, 2010

Decided March 22, 2010

STUCKY, J., delivered the opinion of the Court, in which EFFRON, C.J., and BAKER, J., joined. ERDMANN, J., filed a separate dissenting opinion, in which RYAN, J., joined.


Counsel


For Appellant:  Major Jennifer J. Raab (argued); Major Shannon A. Bennett (on brief); Colonel James B. Roan.


For Appellee:  Captain Joseph J. Kubler (argued); Colonel Douglas P. Cordova, Lieutenant Colonel Jeremy S. Weber, and Gerald R. Bruce, Esq. (on brief).


Military Judge:  John E. Hartsell


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge STUCKY delivered the opinion of the Court.

We granted review to determine whether the military judge erred by accepting Appellant's guilty plea to indecent exposure. We hold that there is no substantial basis in law or fact to question Appellant's plea to indecent exposure and affirm the judgment of the United States Air Force Court of Criminal Appeals (CCA).

## I.

Appellant communicated over the Internet from his on-base dormitory room with a civilian police officer posing as a fourteen-year-old boy using the screen name bradnh14. During their first online conversation, Appellant described what it was like to have a male ejaculate in his mouth. Later that same afternoon, Appellant transmitted to bradnh14 six images of himself nude with an erect penis. In at least one of the images, Appellant was ejaculating. During other chats over the next few weeks, Appellant described himself as an E-3 in the United States Air Force and provided video clips of adult males engaged in explicit sexual acts. Appellant also sent bradnh14 two digital video clips of Appellant ejaculating. On May 3, 2007, Appellant masturbated and ejaculated in front of his webcam, intentionally transmitting the images to bradnh14. Agents from the Air Force Office of Special Investigations

subsequently seized Appellant's computer and found several images of children engaged in sexually explicit acts.

Appellant pled guilty at a general court-martial to attempting, on divers occasions, to send obscene materials to a minor via the Internet; on divers occasions communicating indecent language via the Internet to a person he believed to be a minor; indecent exposure; and possession of child pornography. Articles 80 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 934 (2006). The military judge accepted his pleas and court members sentenced Appellant to a bad-conduct discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the adjudged sentence.

Appellant submitted his case to the CCA without assignment of error, but the CCA specified an issue concerning the providence of Appellant's guilty plea to indecent exposure. United States v. Ferguson, No. 37272, 2009 CCA LEXIS 258, at *2, 2009 WL 2212070, at *1 (A.F. Ct. Crim. App. July 15, 2009). Finding no error, the CCA affirmed the findings and sentence. Id. at *14-*15, 2009 WL 2212070, at *5.

## II.

The indecent exposure specification alleged that Appellant

> did . . . between on or about 9 April 2007 and on or about 3 May 2007, while transmitting images of himself to an audience on the internet through a computer in

3

his dorm room, willfully and wrongfully expose to public view his naked body, his erect penis, and his erect penis while masturbating.

The elements of indecent exposure, an offense specifically delineated by the President under clauses 1 and 2 of Article 134, UCMJ, were:[1]

(1)  That the accused exposed a certain part of the accused's body to public view in an indecent manner;

(2)  That the exposure was willful and wrongful; and

(3)  That, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Manual for Courts-Martial, United States pt. IV, para. 88.b (2005 ed.) (MCM); see United States v. Graham, 56 M.J. 266, 267 (C.A.A.F. 2002).

During the plea inquiry, the military judge advised Appellant of the elements of the offense and the effects of a guilty plea.  Appellant voluntarily admitted under oath that, on or about April 9, 2007, and on or about May 3, 2007, he transmitted live images of himself over the Internet, intentionally exposing his naked body and erect penis while ejaculating to a person he thought was a fourteen-year-old boy.

---

[1] Congress approved a slightly different offense of indecent exposure in Article 120(n), UCMJ, effective for all offenses committed after October 1, 2007.  See National Defense Authorization Act for Fiscal Year 2006, Pub. L. No. 109-163, div. A., tit. V, § 552(a)(1), 119 Stat. 3136, 3257 (2006);

Before engaging in this conduct, Appellant asked bradnh14 whether he was alone.  Bradnh14 responded that he was alone, but Appellant later admitted that he "couldn't have known who was in the room" and that it could have been more than just bradnh14. Appellant further admitted that he performed these acts in public view in an indecent manner, and that it was grossly vulgar, obscene, repugnant, and tended to incite lust.  He asserted that it was indecent because he "couldn't have known who was in the room.  So, therefore, it would be a public -- within public view, and the fact that [he] was sending it to a minor -- that [he] thought was a minor."

In his stipulation of fact, Appellant admitted that the Internet transmission could have been intercepted by a third party, was "public," and "indecent."  At the request of the military judge during the plea inquiry, Appellant confirmed the truth of the contents of the paragraph in which these statements were made.

### III.

#### A.

A military judge may not accept a guilty plea if it is "irregular," the accused "sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty

---

Manual for Courts-Martial, United States, Analysis of the Punitive Articles app. 23 at A23-15 (2008 ed.).

improvidently or through lack of understanding of its meaning and effect." Article 45(a), UCMJ, 10 U.S.C. § 845(a) (2006). The term "improvident" means "'heedless, unwary, not circumspect.'" Bryan A. Garner, A Dictionary of Modern Legal Usage 427 (2d ed. 1995). The term has also been defined as "[of] or relating to a judgment arrived at by using misleading information or a mistaken assumption." Black's Law Dictionary 826 (9th ed. 2009).[2] To prevent the acceptance of improvident pleas, the military judge is required to make "such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." Rule for Courts-Martial 910(e); see United States v. Barton, 60 M.J. 62, 66 (C.A.A.F. 2004); United States v. Jordan, 57 M.J. 236, 238 (C.A.A.F. 2002).

In this case, there is nothing in the record to suggest that Appellant's pleas were irregularly entered or that he entered his pleas improvidently or without understanding the meaning and effect of his pleas. He was represented by counsel, advised of the elements of the offense and the consequences of pleading guilty, was carefully questioned by the military judge about the offense, was given the opportunity to consult with his counsel and ask the military judge questions before his plea was accepted, and provided the military judge a factual basis for

---

[2] We understand that counsel and military appellate courts often use the word "improvident" as a more general term to refer to

the plea.  Therefore, unless Appellant pled guilty to conduct

that was not criminal, we should only review to ensure that he

did not set up matter inconsistent with his plea.

B.

This Court recently characterized its duties in reviewing a

guilty plea conviction:

> [W]e review a military judge's decision to accept a
> guilty plea for an abuse of discretion and questions
> of law arising from the guilty plea de novo.  In doing
> so, we apply the substantial basis test, looking at
> whether there is something in the record of trial,
> with regard to the factual basis or the law, that
> would raise a substantial question regarding the
> appellant's guilty plea.

United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F. 2008).

"By pleading guilty, an accused does more than admit that

he [committed] the various acts alleged in a specification; 'he

is admitting guilt of a substantive crime.'"  United States v.

Campbell, 68 M.J. 217, 219 (C.A.A.F. 2009) (quoting United

States v. Broce, 488 U.S. 563, 570 (1989)).  During the plea

inquiry, Appellant admitted under oath each of the elements of

the offense of indecent exposure, including that he exposed

himself to public view.  When an accused pleads guilty, there is

no requirement that the government establish the factual

predicate for the plea.  United States v. Faircloth, 45 M.J.

172, 174 (C.A.A.F. 1996) (holding that, in a guilty plea case,

---

any ground for invalidating a guilty plea.

the Court would not speculate as to the true victim of larceny with respect to co-payees on a check). "The factual predicate is sufficiently established if 'the factual circumstances as revealed by the accused himself objectively support that plea.'" Id. (quoting United States v. Davenport, 9 M.J. 364, 367 (C.M.A. 1980)). We "will not overturn a military judge's acceptance of a guilty plea based on a 'mere possibility' of a defense." Id. Nor will we "'speculate post-trial as to the existence of facts which might invalidate an appellant's guilty pleas.'" Id. (quoting United States v. Johnson, 42 M.J. 443, 445 (C.A.A.F. 1995)).

## IV.

Appellant asserts that his plea is "improvident"

> because the exposure was not in "public view" where it was done in a private setting; there was no evidence to suggest a third person was present when the images were transmitted or that Appellant had any interest in anyone other than "bradnh14" to view the transmission; and the undercover detective posing as a teenager was neither unsuspecting nor uninterested.

In support of his argument, Appellant cites our decisions in Graham and United States v. Shaffer, 46 M.J. 94 (C.A.A.F. 1997).

Contrary to his pleas, Shaffer was convicted of indecent exposure by appearing naked in the rear of his garage but seen by three persons driving by. Shaffer, 46 M.J. at 95-96. Shaffer claimed that the evidence was not legally sufficient to

establish that his exposures were willful.  Id. at 96.  This

Court held that the evidence was legally sufficient.

> The offense of indecent exposure does not just apply
> to exposures that take place on traditionally public
> lands or in traditionally public buildings.  The
> offense also applies to indecent exposures that occur
> in places "so public and open," including privately-
> owned homes, that they are "certain to be observed" by
> the general population.

Id. at 97.

Graham was convicted of indecent exposure for calling a

fifteen-year-old babysitter into his bedroom while clothed only

in a towel and allowing the towel to drop to the floor, exposing

his penis to her.  Graham, 56 M.J. at 267.  Graham claimed his

conviction could not stand because the indecent exposure

occurred in his bedroom, rather than a more public location.

Id.  This Court held that the offense did not require proof that

the accused exposed himself in a public place, only that he

exposed himself to public view.  Id. at 267-68; see MCM pt. IV,

para. 88.b.(1) ("[t]hat the accused exposed a certain part of

the accused's body to public view in an indecent manner").

"'[P]ublic view' means 'in the view of the public,' and in that

context, 'public' is a noun referring to any member of the

public who views the indecent exposure."  Graham, 56 M.J. at

269.

Appellant's reliance on Shaffer and Graham is misplaced.

First, these appellants pled not guilty and contested the

9

government's theory of the case.  Appellant, by contrast, chose to plead guilty.  Second, contrary to Appellant's contention, Graham does not hold that when an exposure is done in private the alleged victim must be unsuspecting and uninterested.  In Graham, we determined that the location of an exposure is important only to the extent it may affect the proof required to establish that the exposure was willful.  See id. at 268.  While the fact that the exposure occurred in a public place tends to establish willfulness, such is not the case for exposure in a nonpublic place, such as a home.  Id.  As Graham exposed himself in a nonpublic place, the exposure itself was not sufficient to establish willfulness; however, the willfulness was established by the fact that Graham exposed himself to a member of the public -- the babysitter -- who was unsuspecting and uninterested, and had no choice but to see him naked.  Id.  In the case currently before us, this issue -- whether Appellant's acts were willful -- was resolved during the plea inquiry. Appellant confirmed to the military judge that the decision to expose himself "was the result of a freely made decision on [his] part."

Appellant could have pled not guilty, as Shaffer and Graham did, and challenged the prosecution's theory of the specification.  See Campbell, 68 M.J. at 219.  Appellant chose not to.  Had he done so, the prosecution would have been

required to prove beyond a reasonable doubt that Appellant ejaculated in public view. Then, the issue of whether bradnh14 was alone or with others could have been litigated. Instead, Appellant pled guilty and admitted that he performed the acts intentionally, purposefully, and in public view -- in a manner that could be observed by members of the public, bradnh14, and others. By doing so, Appellant relinquished his right to contest the prosecution's theory on appeal, see Broce, 488 U.S. at 571, unless the record discloses matter inconsistent with the plea. Article 45(a), UCMJ. The record does not disclose any such inconsistent matter. Under the circumstances, the military judge was not required to further investigate Appellant's concession that his conduct was undertaken in public view. Faircloth, 45 M.J. at 174. The military judge did not abuse his discretion in accepting Appellant's guilty plea.

V.

The judgment of the United States Air Force Court of Criminal Appeals is affirmed.

<u>United States v. Ferguson</u>, No. 10-0020/AF

ERDMANN, Judge, with whom RYAN, Judge, joins (dissenting):

As I cannot agree with the majority's conclusion that Ferguson's guilty plea to the offense of indecent exposure was provident, I respectfully dissent.  I would reverse the decision of the United States Air Force Court of Criminal Appeals and set aside the finding of guilty to Specification 1 of Charge II.

The offense of indecent exposure, particularly in the Internet age, has been subject to a certain degree of confusion, as evidenced by the opposite conclusions recently reached by the United States Navy-Marine Court of Criminal Appeals and the United States Air Force Court of Criminal Appeals in cases with strikingly similar factual situations.  <u>Compare</u> <u>United States v. Hockemeyer</u>, No. NMCCA 200800077, 2008 CCA LEXIS 310, 2008 WL 4531999 (N-M. Ct. Crim. App. Sep. 30, 2008), <u>with</u> <u>United States v. Ferguson</u>, No. ACM 37272, 2009 CCA LEXIS 258, 2009 WL 2212070 (A.F. Ct. Crim. App. Jul. 15, 2009).  The offense at issue in this case, the Article 134, Uniform Code of Military Justice (UCMJ), offense of indecent exposure, has been replaced by the revised Article 120, UCMJ, and the elements of the new offense are different than they were under the Article 134, UCMJ, offense.[1]  Even though the impact of the majority and dissenting

---

[1] "Indecent exposure" is now defined as:

> Any person subject to this chapter who intentionally exposes, in an indecent manner, in any place where the

opinions in this case will necessarily be limited, I believe that the majority opinion has misapplied this court's decision in United States v. Graham, 56 M.J. 266 (C.A.A.F. 2002).

"[W]e review a military judge's decision to accept a guilty plea for an abuse of discretion . . . ." United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F. 2008). "In doing so, we apply the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." Id. "The providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." United States v. Medina, 66 M.J. 21, 26 (C.A.A.F. 2008) (citing United States v. Care, 18 C.M.A. 535, 538-39, 40 C.M.R. 247, 250-51 (1969)). Review of the statutory elements required to establish an offense is a question of law this court reviews de novo. United States v. Holbrook, 66 M.J. 31, 32 (C.A.A.F. 2008).

The elements of the offense of indecent exposure, in effect at the time of this offense, appear deceptively straightforward:

---

conduct involved may reasonably be expected to be viewed by people other than members of the actor's family or household, the genitalia, anus, buttocks, or female areola or nipple is guilty of indecent exposure and shall be punished as a court-martial may direct.

Article 120(n), UCMJ.

   (1)  That the accused exposed a certain part of the
        accused's body to public view in an indecent
        manner;

   (2)  That the exposure was willful and wrongful; and

   (3)  That, under the circumstances, the accused's
        conduct was to the prejudice of good order and
        discipline in the armed forces or was of a nature
        to bring discredit upon the armed forces.

Manual for Courts-Martial, United States pt. IV, para. 88.b

(2005 ed.) (MCM).  The Manual defined "willful" as "an

intentional exposure to public view" and "indecent" as "that

form of immorality relating to sexual impurity which is not only

grossly vulgar, obscene, and repugnant to common propriety, but

tends to excite lust and deprave the morals with respect to

sexual relations."  MCM pt. IV, para. 88.c, para. 90.c.

   In a series of opinions this court has further defined the

elements of indecent exposure.  For instance, relying primarily

on state court decisions, we have recognized that there are two

different types of indecent exposure:  (1) exposure in a public

place; and (2) exposure in a nonpublic place.  Graham, 56 M.J.

at 268 (citing United States v. Shaffer, 46 M.J. 94, 97

(C.A.A.F. 1997); United States v. Stackhouse, 16 C.M.A. 479,

481, 37 C.M.R. 99, 100 (1967)).  We have further defined "public

view" to mean an exposure that is "in the view of the public"

and "in that context, 'public' is a noun referring to any member

of the public who views the indecent exposure."  Graham, 56 M.J.

at 269.  While these criteria are not found in the elements

delineated by the President, it is now well settled that an

indecent exposure can occur in a public location or a nonpublic

location, such as a private home, as long as a member of the

public views the exposure.

In Graham the appellant invited a fifteen-year-old

babysitter into a bedroom and allowed the towel he was wearing

to fall to the floor, thus exposing himself.  Id. at 267.  This

court found the evidence legally sufficient to satisfy the

elements of the offense of indecent exposure.  Id. at 268.  The

court noted that the majority of state decisions:

> make clear that the focus of this offense is on the
> victim, not on the location of the crime, and that the
> offense is committed regardless of whether it takes
> place in the bedroom or on the street.  This is
> because the purpose of criminalizing public indecency
> "is to protect the public from shocking and
> embarrassing displays of sexual activities.  A person
> need not be in a public place to be a member of the
> public."

Id. at 268-69 (citations omitted).

Ferguson argues that under Graham, when the exposure is

done in a nonpublic location, the focus of the offense is

whether the victim is "unsuspecting" or "uninterested."  The

majority rejects that argument and concludes that "Graham does

not hold that when an exposure is done in private the alleged

victim must be unsuspecting and uninterested."  The opinion goes

on, however, to observe that in Graham "willfulness was

4

established by the fact that Graham exposed himself to a member of the public -- the babysitter -- who was unsuspecting and uninterested, and had no choice but to see him naked."[2]  The Graham court also relied on the status of the victim in their analysis of the "indecency" element:

> Nor is this case about whether appellant's exposure was indecent.  He did not expose himself to his spouse or girlfriend, or to a family member or other person involved with him in such a way that a given exposure might not be indecent.  Appellant exposed himself to a fifteen-year-old girl who was completely unrelated to and uninvolved with him, and who neither invited nor consented to his conduct.

Id. at 267.

The Graham court considered the status of the victim and whether that individual consented to the exposure in analyzing both the "indecency" and "willfulness" elements of indecent exposure.  Id. at 268-69.  While not specifically discussed in that opinion, the status and consent of the victim would also be relevant to the "wrongful" element.  After Graham, it is difficult to dispute that consideration of a victim's status must be included in any analysis of an indecent exposure offense in a nonpublic location.

---

[2] In discussing the "willful" element in Graham, the court noted that Graham exposed himself in a nonpublic place, but did so by inviting the babysitter into the bedroom and allowing his towel to drop in front of her.  "In this way, he made certain that an unsuspecting and uninterested member of the general population had no choice but to see him naked."  Graham, 56 M.J. at 268.

It appears that Ferguson sent a live video transmission of himself masturbating to bradnh14 via the Yahoo instant messenger program.[3]  [B]radnh14 was an undercover New Hampshire police officer.  Prior to the video transmission, Ferguson and bradnh14 had the following chat:

| | |
|---|---|
| Ferguson: | im hard now lol |
| bradnh14: | wow love to see that |
| Ferguson: | lol ya i bet |
| Ferguson: | u want ot |
| bradnh14: | yea |
| Ferguson: | ok |
| Ferguson | u alone? |
| Bradnh14: | yea |
| Ferguson: | k |
| bradnh14: | wow |
| Ferguson: | lol like |
| bradnh14: | love |
| bradnh14: | i am doing it too |
| Ferguson: | nice |
| bradnh14: | wow i am close |
| bradnh14: | wow |
| Ferguson: | lol |
| bradnh14: | hot |
| Ferguson: | tat was good |
| bradnh14: | 4 me 2 |

While Ferguson admitted during the providence inquiry that it was possible that someone else might have been able to view the transmission, there is no evidence in the record that anyone

_____

[3] The record does not specifically reflect how the live video transmission was sent to bradnh14 on May 3, 2007, but the record does reflect that on April 9, 2007, after establishing contact with bradnh14 in an Internet chat room, Ferguson sent him images via the Yahoo instant messenger program.  We have previously recognized that "[m]embers of the public are not generally able to view e-mails and instant messenger conversations between individuals . . . ."  United States v. Wilcox, 66 M.J. 442, 450, n.6 (C.A.A.F. 2008).

other than bradnh14 actually observed the exposure.[4]  Prior to
sending the video transmission, Ferguson specifically asked
bradnh14 if he was alone and bradnh14 responded that he was.
There is no evidence in the record that contradicts that
statement.  The military judge did not explore whether bradnh14
had consented to the exposure and if he had consented, the
possible consequences of that consent to Ferguson's plea.  Here
bradnh14 not only consented to the exposure, he specifically
requested that Ferguson transmit the video image.

While bradnh14 was a member of the public who viewed the
exposure in a nonpublic location, he certainly cannot be
considered "unsuspecting" or "uninterested."  He was a law
enforcement officer conducting an undercover investigation who
specifically invited and consented to the exposure.  The facts
as presented here may have constituted the offense of attempted
indecent exposure, but they do not meet the legal requirements
of indecent exposure as defined by the MCM and this court.

While finding Ferguson's plea provident, the majority also
holds that his guilty plea waived his right to challenge the
prosecution's theory on appeal, citing United States v. Broce,

---

[4] To adopt a standard that an exposure in a nonpublic location
becomes public if someone "might have observed" the act creates
a standard that is meaningless.  Regardless of the location, it
is always possible to speculate that someone might have peeked
into a window or hacked into a private Internet communication to
observe what otherwise would be a private act.

488 U.S. 563 (1989). However, Broce also notes that "[t]here are exceptions where on the face of the record the court had no power to enter the conviction or impose the sentence"[5] and "the plea cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." Id. at 570 (citation and quotation marks omitted); see also Medina, 66 M.J. at 26. As Ferguson was not advised that the status or consent of the victim could impact his culpability, he did not possess the necessary understanding of the law prior to entering his plea and there is no waiver in this case.

I would therefore conclude that there is an insufficient factual and legal basis to support Ferguson's guilty plea to the offense of indecent exposure. I would set aside the finding of guilty as to Specification 1 of Charge II and return the case to the United States Air Force Court of Criminal Appeals for sentence reassessment.[6]

---

[5] 488 U.S. at 569.
[6] Because I would set aside the finding as to Specification 1 of Charge II, it would be unnecessary to take corrective action concerning the court-martial order, which incorrectly indicates that Ferguson was charged with, pled guilty to, and was found guilty of indecent exposure "on divers occasions."