ERDMANN, Judge,
with whom RYAN, Judge,
joins (dissenting):
As I cannot agree with the majority’s conclusion that Ferguson’s guilty plea to the offense of indecent exposure was provident, I respectfully dissent. I would reverse the decision of the United States Air Force Court of Criminal Appeals and set aside the finding of guilty to Specification 1 of Charge II.
The offense of indecent exposure, particularly in the Internet age, has been subject to a certain degree of confusion, as evidenced by the opposite conclusions recently reached by the United States Navy-Marine Court of Criminal Appeals and the United States Air Force Court of Criminal Appeals in eases with strikingly similar factual situations. Compare United States v. Hockemeyer, No. NMCCA 200800077, 2008 CCA LEXIS 310, 2008 WL 4531999 (N.M.Ct.Crim.App. Sept. 30, 2008), with United States v. Ferguson, No. ACM 37272, 2009 CCA LEXIS 258, 2009 WL 2212070 (A.F.Ct.Crim.App. July 15, 2009). The offense at issue in this case, the Article 134, Uniform Code of Military Justice (UCMJ), offense of indecent exposure, has been replaced by the revised Article 120, UCMJ, 10 U.S.C. § 920, and the elements of the new offense are different than they were under the Article 134, UCMJ, offense.[1] Even though the impact of the majority and dissenting opinions in this case will necessarily be limited, I believe that the majority opinion has misapplied this court’s decision in *436 United States v. Graham, 56 M.J. 266 (C.A.A.F.2002).
“[W]e review a military judge’s decision to accept a guilty plea for an abuse of discretion .... ” United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F.2008). “In doing so, we apply the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant’s guilty plea.” Id. “The providence of a plea is based not only on the accused’s understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts.” United States v. Medina, 66 M.J. 21, 26 (C.A.A.F.2008) (citing United States v. Care, 18 C.M.A. 535, 538-39, 40 C.M.R. 247, 250-51 (1969)). Review of the statutory elements required to establish an offense is a question of law this court reviews de novo. United States v. Holbrook, 66 M.J. 31, 32 (C.A.A.F.2008).
The elements of the offense of indecent exposure, in effect at the time of this offense, appear deceptively straightforward:
(1) That the accused exposed a certain part of the accused’s body to public view in an indecent manner;
(2) That the exposure was willful and wrongful; and
(3) That, under the circumstances, the accused’s conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
Manual for Courts-Martial, United States pt. IV, para. 88.b (2005 ed.) (MCM). The Manual defined “willful” as “an intentional exposure to public view” and “indecent” as “that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations.” MCM pt. IV, para. 88.e, para. 90.c.
In a series of opinions this court has further defined the elements of indecent exposure. For instance, relying primarily on state court decisions, we have recognized that there are two different types of indecent exposure: (1) exposure in a public place; and (2) exposure in a nonpublic place. Graham, 56 M.J. at 268 (citing United States v. Shaffer, 46 M.J. 94, 97 (C.A.A.F.1997); United States v. Stackhouse, 16 C.M.A. 479, 481, 37 C.M.R. 99, 100 (1967)). We have further defined “public view” to mean an exposure that is “in the view of the public” and “in that context, ‘public’ is a noun referring to any member of the public who views the indecent exposure.” Graham, 56 M.J. at 269. While these criteria are not found in the elements delineated by the President, it is now well settled that an indecent exposure can occur in a public location or a nonpublic location, such as a private home, as long as a member of the public views the exposure.
In Graham the appellant invited a fifteen-year-old babysitter into a bedroom and allowed the towel he was wearing to fall to the floor, thus exposing himself. Id. at 267. This court found the evidence legally sufficient to satisfy the elements of the offense of indecent exposure. Id. at 268. The court noted that the majority of state decisions:
make clear that the focus of this offense is on the victim, not on the location of the crime, and that the offense is committed regardless of whether it takes place in the bedroom or on the street. This is because the purpose of criminalizing public indecency “is to protect the public from shocking and embarrassing displays of sexual activities. A person need not be in a public place to be a member of the public.”
Id. at 268-69 (citations omitted).
Ferguson argues that under Graham, when the exposure is done in a nonpublic location, the focus of the offense is whether the victim is “unsuspecting” or “uninterested.” The majority rejects that argument and concludes that “Graham does not hold that when an exposure is done in private the alleged victim must be unsuspecting and uninterested.” The opinion goes on, however, to observe that in Graham “willfulness was established by the fact that Graham exposed himself to a member of the public — the babysitter — who was unsuspecting and uninterested, and had no choice but to see him *437 naked.”[2] The Graham court also relied on the status of the victim in their analysis of the “indecency” element:
Nor is this case about whether appellant’s exposure was indecent. He did not expose himself to his spouse or girlfriend, or to a family member or other person involved with him in such a way that a given exposure might not be indecent. Appellant exposed himself to a fifteen-year-old girl who was completely unrelated to and uninvolved with him, and who neither invited nor consented to his conduct.
Id. at 267.
The Graham court considered the status of the victim and whether that individual consented to the exposure in analyzing both the “indecency” and “willfulness” elements of indecent exposure. Id. at 268-69. While not specifically discussed in that opinion, the status and consent of the victim would also be relevant to the “wrongful” element. After Graham, it is difficult to dispute that consideration of a victim’s status must be included in any analysis of an indecent exposure offense in a nonpublic location.
It appears that Ferguson sent a live video transmission of himself masturbating to bradnhl4 via the Yahoo instant messenger program.[3] [B]radnhl4 was an undercover New Hampshire police officer. Prior to the video transmission, Ferguson and bradnhl4 had the following chat:
Ferguson: im hard now lol
bradnhl4: wow love to see that
Ferguson: lol ya i bet
Ferguson: u want ot
bradnhl4: yea
Ferguson: ok
Ferguson: u alone?
Bradnhl4: yea
Ferguson: k
bradnhl4: wow
Ferguson: lol like
bradnhl4: love
bradnhl4: i am doing it too
Ferguson: nice
bradnhl4: wow i am close
bradnhl4: wow
Ferguson: lol
bradnhl4: hot
Ferguson: tat was good
bradnhl4: 4 me 2
While Ferguson admitted during the providence inquiry that it was possible that someone else might have been able to view the transmission, there is no evidence in the record that anyone other than bradnhl4 actually observed the exposure.[4] Prior to sending the video transmission, Ferguson specifically asked bradnhl4 if he was alone and bradnhl4 responded that he was. There is no evidence in the record that contradicts that statement. The military judge did not explore whether bradnhl4 had consented to the exposure and if he had consented, the possible consequences of that consent to Ferguson’s plea. Here bradnhl4 not only consented to the exposure, he specifically requested that Ferguson transmit the video image.
While bradnhl4 was a member of the public who viewed the exposure in a nonpublic location, he certainly cannot be considered “unsuspecting” or “uninterested.” He was a *438 law enforcement officer conducting an undercover investigation who specifically invited and consented to the exposure. The facts as presented here may have constituted the offense of attempted indecent exposure, but they do not meet the legal requirements of indecent exposure as defined by the MCM and this court.
While finding Ferguson’s plea provident, the majority also holds that his guilty plea waived his right to challenge the prosecution’s theory on appeal, citing United States v. Broce, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). However, Broce also notes that “[tjhere are exceptions where on the face of the record the court had no power to enter the conviction or impose the sentence”[5] and “the plea cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.” Id. at 570,109 S.Ct. 757 (citation and quotation marks omitted); see also Medina, 66 M. J. at 26. As Ferguson was not advised that the status or consent of the victim could impact his culpability, he did not possess the necessary understanding of the law prior to entering his plea and there is no waiver in this case.
I would therefore conclude that there is an insufficient factual and legal basis to support Ferguson’s guilty plea to the offense of indecent exposure. I would set aside the finding of guilty as to Specification 1 of Charge II and return the case to the United States Air Force Court of Criminal Appeals for sentence reassessment.[6]

. "Indecent exposure” is now defined as:
Any person subject to this chapter who intentionally exposes, in an indecent manner, in any place where the conduct involved may reasonably be expected to be viewed by people other than members of the actor’s family or household, the genitalia, anus, buttocks, or female areola or nipple is guilty of indecent exposure and shall be punished as a court-martial may direct.
Article 120(n), UCMJ.

. In discussing the “willful’' element in Graham, the court noted that Graham exposed himself in a nonpublic place, but did so by inviting the babysitter into the bedroom and allowing his towel to drop in front of her. “In this way, he made certain that an unsuspecting and uninterested member of the general population had no choice but to see him naked.” Graham, 56 M.J. at 268.

. The record does not specifically reflect how the live video transmission was sent to bradnhl4 on May 3, 2007, but the record does reflect that on April 9, 2007, after establishing contact with bradnh!4 in an Internet chat room, Ferguson sent him images via the Yahoo instant messenger program. We have previously recognized that "[mjembers of the public are not generally able to view e-mails and instant messenger conversations between individuals....” United States v. Wilcox, 66 MJ. 442, 450, n. 6 (C.A.A.F.2008).

.To adopt a standard that an exposure in a nonpublic location becomes public if someone "might have observed” the act creates a standard that is meaningless. Regardless of the location, it is always possible to speculate that someone might have peeked into a window or hacked into a private Internet communication to observe what otherwise would be a private act.

. 488 U.S. at 569, 109 S.Ct. 757.

. Because I would set aside the finding as to Specification 1 of Charge II, it would be unnecessary to take corrective action concerning the court-martial order, which incorrectly indicates that Ferguson was charged with, pled guilty to, and was found guilty of indecent exposure "on divers occasions.”